**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY,
a nonprofit corporation; CENTRAL
AZ PADDLERS CLUB,
    *Plaintiffs-Appellants,*

    v.

ANN M. VENEMAN, Secretary of the
United States Department of
Agriculture; DALE BOSWORTH,
Chief of United States Forest
Service; ELEANOR TOWNS, Regional
Forester, United States Forest
Service, Region Three; UNITED
STATES FOREST SERVICE,
    *Defendants-Appellees.*

No. 02-16201

D.C. No.
CV 01-00477 WDB

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
William D. Browning, District Judge, Presiding

Argued and Submitted
March 11, 2003—San Francisco, California

Filed July 7, 2003
Opinion Withdrawn and
Amended Opinion Filed January 7, 2005

Before: Alfred T. Goodwin, A. Wallace Tashima, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Tashima

**COUNSEL**

Matthew K. Bishop, Western Environmental Law Center, Taos, New Mexico, for the plaintiffs-appellants.

Anna T. Katselas, U.S. Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the defendants-appellees.

**ORDER**

Federal appellees' petition for panel rehearing is granted. The opinion filed July 7, 2003, and reported at 335 F.3d 849, is withdrawn and replaced by the amended opinion filed concurrently with this order.

**OPINION**

TASHIMA, Circuit Judge:

In our previous opinion, we held that the district court had jurisdiction to review the claims of the Center for Biological Diversity and Central Arizona Paddlers Club (together the "Center") under § 706(1) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), because (1) under the Wild and Scenic Rivers Act ("WSRA"), 16 U.S.C. § 1276(d)(1), the United States Forest Service ("Forest Service") had a mandatory duty to consider potentially eligible rivers in planning for

the use and development of land resources, and (2) the Forest Service failed to act pursuant to this mandatory duty. *Ctr. for Biological Diversity v. Veneman*, 335 F.3d 849, 857 (9th Cir. 2003). Our conclusion relied on our holding in *Montana Wilderness Association, Inc. v. United States Forest Service*, 314 F.3d 1146 (9th Cir. 2003), that the Forest Service's duty to maintain potential wilderness study areas in their presently existing wilderness character under the Montana Wilderness Study Act was a nondiscretionary, mandatory duty that the Service could be compelled to carry out under § 706(1) of the APA. *Id.* at 1151.

After our opinion was filed, the Supreme Court held in *Norton v. Southern Utah Wilderness Alliance*, 124 S. Ct. 2373 (2004) ("*SUWA*"), that a claim under § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Id.* at 2379. The Court also vacated *Montana Wilderness*, on which we relied extensively in reaching our decision in this case, and remanded that case to this court for further consideration in light of *SUWA*. *Veneman v. Mont. Wilderness Ass'n, Inc.*, 124 S. Ct. 2870, 2870 (2004). Because the Court explained in *SUWA* that a "failure to consider" certain issues while planning for the use and development of land resources is not a failure to take discrete agency action, as required for standing under § 706(1), we now conclude that the Center has not alleged a failure to take a discrete agency action.

We have jurisdiction under 28 U.S.C. § 1291, and we hold that the district court did not err in granting the Forest Service's motion to dismiss for lack of standing. We reverse, however, the district court's denial of the Center's motion for leave to amend, and remand with instructions to permit the Center to amend its complaint.

## BACKGROUND

The WSRA created a national system of free-flowing rivers to be permanently administered as wild, scenic, or recre-

ational rivers by state agencies. *See* 16 U.S.C. §§ 1271-1287. A river is eligible for protection under the WSRA if it is free-flowing and possesses at least one of the outstanding remarkable values set forth in the statute. 16 U.S.C. §§ 1271, 1273(b). The WSRA requires the Secretaries of Agriculture and the Interior to conduct "specific studies and investigations" to discover rivers eligible for inclusion in the national wild and scenic rivers system ("WSRS"). 16 U.S.C. § 1276(d)(1). Rivers are designated for inclusion in the WSRS through an act of Congress or an application by a state governor acting pursuant to an act of the state legislature. 16 U.S.C. § 1273(a).

In 1993, in response to a request by the Arizona congressional delegation, the Forest Service conducted three studies of Arizona's free-flowing rivers, identifying those streams and river segments that satisfied the statutory requirements for inclusion in the WSRS. The Service published its findings in a 300-page report (the "1993 Report"), which identified 57 rivers and streams that qualified as potential additions to the WSRS and which provided all of the necessary information to determine which Arizona streams or river segments met the WSRA's criteria for designation.

In 2001, the Center commenced this action for the Forest Service's alleged failure to comply with 16 U.S.C. § 1276(d)(1), which directs the government to take rivers and streams that qualify for inclusion in the WSRS into account while planning for the use and development of federal land. Because the WSRA does not provide for a private right of action, the Center asserted standing under § 706(1) of the APA, which provides relief for "agency action unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1).

The district court concluded that the Center failed to meet the requirements of § 706(1) because the Center could not show that the Forest Service unlawfully withheld agency action. It reasoned that the Forest Service had no statutory

duty "to perform a systematic § 1276(d)(1) review before the revision of a forest plan." The district court therefore dismissed the action for lack of subject matter jurisdiction. In addition, concluding that the WSRA imposes no statutory duty "to perform a systematic § 1276(d)(1) review before the revision of a forest plan," the district court denied the Center's request for leave to amend its complaint, reasoning that any amendment would be futile. It further noted that any particular project-specific determinations "would be more appropriately brought in a new lawsuit if Plaintiffs wish to proceed." The Center timely appealed.

## STANDARD OF REVIEW

We review de novo a dismissal for lack of subject matter jurisdiction. *See Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 n.2 (9th Cir. 2004); *City of San Diego v. Whitman*, 242 F.3d 1097, 1101 (9th Cir. 2001). We also review de novo a dismissal without leave to amend. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Denial of leave to amend "is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Id.*

## DISCUSSION

The Forest Service argues that (1) the 1993 Report is not an agency-initiated study that inventories eligible rivers under the WSRA, and (2) the Center has no standing under § 706(1). The Center argues that the district court erred in denying its motion for leave to amend its complaint. We address each of these arguments in turn.

## I. The 1993 Report

**[1]** The 1993 Report "provides resource information for potential wild, scenic, and recreational rivers on six National Forests in Arizona." In a similar passage, the Report states

that its purpose is to provide information on those rivers that the Forest Service "determine[s] to be potentially eligible for inclusion in the national wild and scenic rivers systems." The 1993 Report conforms to the dictates of the WSRA by expressly identifying the two statutory characteristics of an eligible river: first, that it is free flowing, and second, that it possesses at least one "outstanding remarkable value." See 16 U.S.C. §§ 1271, 1273(b). Furthermore, the rivers included in the 1993 Report have been listed on the Nationwide Rivers Inventory, "a register of river segments that potentially qualify as national wild, scenic or recreational river areas" maintained by the National Park Service "in partial fulfillment of [16 U.S.C. § 1276(d)]." Nationwide Rivers Inventory, *available at* http://www.nps.gov/ncrc/programs/rtca/nri/states/az.html.

**[2]** For the foregoing reasons, we conclude that the 1993 Report constitutes an agency-initiated inventory of Arizona rivers potentially eligible for inclusion in the nationwide WSRS.

## II.    "Failure to Act" Under § 706(1) of the APA

The Forest Service argues that the consideration of potentially eligible rivers in project plans is neither (1) a discrete agency action, nor (2) an action that the Service is legally required to take under the WSRA. We limit our consideration to the Center's "discrete agency action" claim.

In *SUWA*, the plaintiffs asserted that the Bureau of Land Management ("BLM") failed to comply with the Federal Land Policy and Management Act of 1976 ("FLPMA"), which requires the Secretary of the Interior to manage designated wilderness study areas " 'in a manner so as not to impair the suitability of such areas for preservation as wilderness.' " 124 S. Ct. at 2377 (quoting 43 U.S.C. § 1782(c)). Because FLPMA does not provide a private right of action,

the plaintiffs sought relief under § 706(1) of the APA. *See SUWA*, 124 S. Ct. at 2378.

**[3]** The Court concluded that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 2379. First, the Court explained that the term "failure to act," as used in § 706(1), is "a failure to take an agency action — that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Id.* at 2379. The Court noted that § 551(13) of the APA defined agency action by listing "five categories of decisions made or outcomes implemented by an agency — 'agency rule, order, license, sanction [or] relief.' " *Id.* at 2378 (quoting 8 U.S.C. § 551(13)).

> All of those categories involve circumscribed, discrete agency actions, as their definitions make clear: "an agency statement of . . . future effect designed to implement, interpret, or prescribe law or policy" (rule); "a final disposition . . . in a matter other than rule making" (order); a "permit . . . or other form of permission" (license); a "prohibition . . . or taking [of] other compulsory or restrictive action" (sanction); or a "grant of money, assistance, license, authority," etc., or "recognition of a claim, right, immunity," etc., or "taking of other action on the application or petition of, and beneficial to, a person" (relief).

*Id.* (quoting 8 U.S.C. § 551(4), (6), (8), (10), (11)).

The Court further noted that the limitation to discrete agency action "precludes the kind of broad programmatic attack" rejected by the Court in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). *SUWA*, 124 S. Ct. at 2379-80. The Court explained that, in *National Wildlife Federation*, the plaintiffs challenged the BLM's land withdrawal review

program, "couched as unlawful agency 'action' that the plaintiffs wished to have 'set aside' under [§ 706(2) of the APA.]" *SUWA*, 124 S. Ct. at 2380 (noting that the Court held in *Nat'l Wildlife Fed'n* that plaintiffs could not "seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made"). The Court then reasoned that the plaintiffs in *National Wildlife Federation* "would have fared no better if they had characterized the agency's alleged 'failure to revise land use plans in proper fashion' and 'failure to consider multiple use' . . . in terms of 'agency action unlawfully withheld' under § 706(1), rather than agency action 'not in accordance with law' under § 706(2). *SUWA*, 124 S. Ct. at 2380.

**[4]** Second, the Court explained that "the only agency action that can be compelled under the APA is action legally *required*." *Id.* at 2379. The Court reasoned that "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.' " *Id.* (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)). The Court explained that, "[t]hus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 2380.

The Court then turned to the plaintiffs' claims and reasoned that, although the relevant provision of FLPMA "is mandatory as to the object to be achieved" — that is, the management of wilderness study areas in a manner so as not to impair the suitability of such areas for preservation as wilderness — "it leaves BLM a great deal of discretion in deciding how to achieve it." *Id.* The Court reasoned that the statute "assuredly does not mandate, with the clarity necessary to support judicial action under § 706(1), the total exclusion of [off-road vehicle] use." *Id.*

The Court also rejected the plaintiffs' assertion that a federal court "could simply enter a general order compelling compliance with that mandate [of non-impairment], without suggesting any particular manner of compliance," reasoning that "[g]eneral deficiencies in compliance . . . lack the specificity requisite for agency action." *Id.* at 2381. The Court explained that empowering courts to enter general orders "compelling compliance with broad statutory mandates" would result in "injecting the judge into day-to-day agency management" and raises the "prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives." *Id.*

The Court concluded that the APA therefore did not confer upon the plaintiffs a right to sue for the BLM's alleged violation of the non-impairment provision of FLPMA. *See id.* The Court also reasoned that the BLM land use plans — with which the plaintiffs alleged the BLM failed to comply — were not legally binding commitments enforceable under § 706(1), and concluded that therefore the courts had no authority to compel agency compliance with the land use plans under § 706(1). *Id.* at 2384.

The Forest Service argues that, under *SUWA*, the WSRA's statutory directive to consider the 57 potentially eligible rivers does not involve a discrete agency action, but rather, constitutes only "part of the Forest Service's decisionmaking process leading to a final agency action, i.e., the issuance or denial of a permit." The Service also argues that the Center's "failure to consider" claim is a "broad programmatic challenge to the Forest Service's overall management of the river areas" of the kind rejected by the Supreme Court in *SUWA*.

[5] The Court's reasoning in *SUWA* compels us to conclude that the Center does not assert a failure to take a "discrete agency action." The complaint alleges that the Forest Service failed to consider the 57 potentially eligible rivers while planning for the use and development of water and related land

resources in the national forests of Arizona. This allegation is indistinguishable from the one rejected by the Court in *SUWA*. There, the Court reasoned that, even if the plaintiffs in *National Wildlife Federation* had characterized the agency's alleged "failure to revise land use plans in proper fashion" and "failure to consider multiple use" in terms of "agency action unlawfully withheld" under § 706(1) — rather than agency action "not in accordance with law" under § 706(2) — the plaintiffs nonetheless would not have pled a failure to take a "discrete agency action." *SUWA*, 124 S. Ct. at 2380.

The Center argues that its failure to consider claim is more specific than the example set forth in *SUWA* because (1) its claim involves only 57 specific rivers, and (2) the Forest Service "either gives, or does not give, consideration to the rivers while planning," thus avoiding the danger of requiring "pervasive oversight by federal courts over the manner and pace of agency compliance," which the Court warned against in *SUWA*. While a duty "to consider" may be more specific and less discretionary than the duty " 'to manage [wilderness study areas] . . . in a manner so as not to impair the suitability of such areas for preservation as wilderness,' " *id.* (quoting 43 U.S.C. § 1782(c)), this argument fails sufficiently to distinguish the Center's claim from the "failure to consider" example rejected by the Court in *SUWA*.

**[6]** Because the Center fails to allege a discrete agency action that the Forest Service failed to take, the Center has no standing under § 706(1). *See id.* at 2385 (sustaining district court's dismissal for lack of subject matter jurisdiction). Given the Supreme Court's holding in *SUWA*, we affirm the district court's dismissal for lack of subject matter jurisdiction.

### III.   Motion for Leave to Amend

The Center argues that the district court erred in denying it leave to amend its complaint to assert claims for which

§ 706(1) provides standing. The Center asserts that it has specific information, obtained through Freedom of Information Act requests, about individual projects in the watersheds of the 57 rivers at issue, "where the Forest Service has authorized livestock grazing, mining, water projects, and/or timber harvesting . . . without first taking the rivers' wild and scenic status into account." The Center further argues that, although it technically could assert issues not pleaded in this case in a separate suit, the doctrine of res judicata might prevent it from doing so.

**[7]** Although the Court's reasoning in *SUWA* apparently forecloses a general "failure to consider" claim under § 706(1), the Center may be able to assert a "discrete agency action that [the agency] is required to take" under § 1276(d)(1) of the WSRA by alleging specific failures of the Forest Service to consider specific rivers when planning for specific projects. For example, the Forest Service's failure to consider a specific river when granting a license to permit livestock grazing within the watershed of that specific river may constitute a failure to take discrete agency action that the Service is required to take.

Further, the Center may be able to assert a claim for failure to act pursuant to (1) other, related provisions of the WSRA, and (2) the regulations, promulgated by the Departments of Agriculture and the Interior, interpreting the WSRA. For example, § 1283(a) of the WSRA provides,

> The Secretary of the Interior, the Secretary of Agriculture, and the head of any other Federal department or agency having jurisdiction over any lands which include, border upon, or are adjacent to, any river included within the National Wild and Scenic Rivers System or under consideration for such inclusion, in accordance with section 1273(a)(ii), 1274(a), or 1276(a) of this title, shall take such action respecting management policies, regulations,

> contracts, plans, affecting such lands . . . as may be necessary to protect such rivers in accordance with the purposes of this chapter. . . . Particular attention shall be given to scheduled timber harvesting, road construction, and similar activities which might be contrary to the purposes of this chapter.

16 U.S.C. § 1283(a). The Center may be able to allege a failure to take specific, discrete agency actions "respecting management policies, regulations, contracts, [or] plans" that are "necessary to protect" specific rivers pursuant to § 1283(a). *See id.*; *see also Wilderness Soc'y v. Tyrrel*, 918 F.2d 813, 820 (9th Cir. 1990) (remanding to the district court the factual question of whether the Forest Service's grant of permission to harvest burned timber on federal land adjacent to a river in the WSRS fulfilled the Service's obligations under § 1283). Similarly, the Center may be able to allege a failure to comply with the regulations promulgated by the Departments of Agriculture and the Interior, which provide that, with regard to rivers potentially eligible for inclusion in the WSRS, agencies "will include an analysis of alternatives . . . . encompassing all reasonable proposals for use of the river area including uses which may be incompatible with designation of the river area as a component of the national system." 47 Fed. Reg. 39455, 39458 (Sept. 7, 1982).

**[8]** In sum, it is not clear beyond doubt that amendment of the complaint would be futile. *See Thinket Ink Info. Res.*, 368 F.3d at 106 (explaining that dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment). Further, contrary to the district court's belief, dismissal with prejudice may, indeed, preclude the Center from asserting such claims in a separate proceeding under the doctrine of claim preclusion. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001) (explaining that a dismissal that precludes refiling of the same claim in the same court is an "adjudication upon the merits" under Fed. R. Civ. P. 41(b)); *Cent. Delta Water Agency v.*

*United States*, 306 F.3d 938, 952-53 (9th Cir. 2002) (explaining that claim preclusion applies where the two suits arise out of the same transactional nucleus of facts). We therefore reverse the district court's denial of the Center's motion for leave to amend.

## CONCLUSION

The Supreme Court explained in *SUWA* that a "failure to consider" certain issues while planning for the use and development of land resources is not a failure to take discrete agency action, as required for standing under § 706(1). Because the Center does not allege a failure to take a discrete agency action, we affirm the district court's dismissal for lack of standing under § 706(1). At the same time, however, because it is not clear that amendment of the complaint would be futile, we reverse the district court's denial of the Center's motion for leave to amend and remand with instructions to permit the Center to amend its complaint. Each side shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**