**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RUSSELL H. JOHNSON, III,
        *Plaintiff-Appellant,*

v.

LUCENT TECHNOLOGIES INC.;
CONNECTICUT GENERAL LIFE
INSURANCE COMPANY, Erroneously
Sued As CIGNA Healthcare,
        *Defendants-Appellees.*

No. 09-55203

D.C. No.
2:08-cv-06002-CAS-
CT

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
March 7, 2011—Pasadena, California

Filed August 4, 2011
Amended August 19, 2011

Before: Betty B. Fletcher, Stephen Reinhardt, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge B. Fletcher

**COUNSEL**

William J. Kelley, III, and Pamela A. Kelley, Kelley & Kelley, Irvine, California, for the plaintiff-appellant.

Adrienne C. Publicover, Russell H. Birner, and Lawrence J. Rose, Wilson Elser Moskowitz Edelman & Dicker LLP, San Francisco, California, for the defendants-appellees.

**ORDER**

The opinion filed on August 4, 2011 is hereby corrected as follows:

On page 10218, fourth line from the bottom of the text, replace "1865" with "1658."

On page 10218, first, second, fifth, and sixth lines in footnote 5, replace "1865" with "1658."

On page 10219, first and last line of the first paragraph, and third line of the second paragraph, replace "1865" with "1658."

The opinion remains otherwise unchanged.

---

## OPINION

B. FLETCHER, Circuit Judge:

This case requires us to decide whether 42 U.S.C. § 1981 retaliation claims are governed by the four-year statute of limitations applicable to claims "arising under an Act of Congress enacted" after December 1, 1990, 28 U.S.C. § 1658, or by the personal injury statute of limitations of the forum state. Section 1981 retaliation claims were foreclosed by *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), and then made again possible by the Civil Rights Act of 1991. Because they arise under a post-December 1, 1990 Act of Congress, section 1981 retaliation claims are governed by the four-year statute of limitations under § 1658. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

## BACKGROUND

### I.   Employment Relationship and Prior Litigation

Prior to 1986, Johnson, an African American, was employed by Lucent's predecessor, AT&T Bell Laboratories, in Pennsylvania.[1] In 1986, Johnson took disability leave on

---

[1]For convenience, Johnson's former employer, regardless of the time frame, will be referred to as "Lucent."

grounds of mental disability. In 1987, Johnson was terminated.

In 1989, Johnson, *pro se*, sued Lucent for disability benefits in the District Court for the Eastern District of Pennsylvania. The court found Johnson eligible for long-term disability benefits under Lucent's benefit plan. Johnson was directed to place himself under the care of one of three recommended psychiatrists or under the care of a psychiatrist of his own choosing, if approved by Lucent or its plan administrator, and to provide proof, on a monthly basis, that he was engaged in an ongoing satisfactory treatment program. Lucent and its plan administrator retained the right to petition the court to terminate the benefits upon Johnson's failure to adhere to the terms of the order or upon any other just and sufficient cause.

Lucent did not comply with the order. In 1990, Johnson sued Lucent again. The Pennsylvania district court again found Johnson eligible for long-term disability benefits and ordered Lucent to pay Johnson disability benefits retroactively. Lucent was also ordered to pay the bills of Johnson's then-psychiatrist or such other psychiatrist as selected by Johnson. The court directed that the treating psychiatrist notify Lucent quarterly that Johnson was undergoing psychiatric treatment and that he was participating meaningfully in the treatment. Lucent retained the right to petition to terminate the benefits if such notice was not provided. The court's previous order otherwise remained in full force and effect except as amended by its current order.

In 2005, Johnson, *pro se*, sued Lucent and several individuals in Los Angeles County Superior Court for, *inter alia*, assault, battery, intentional infliction of emotional distress, and violations of the California Fair Employment and Housing Act, related to events that allegedly occurred in 1986. Lucent removed the case to the District Court for the Central District of California and moved to dismiss it for failure to state claims upon which relief can be granted. *See* Fed. R.

Civ. P. 12(b)(6). The district court granted the motion to dismiss, but twice granted Johnson leave to amend. Johnson took the opportunity to add numerous new claims. The district court dismissed all claims as time-barred. This court affirmed.

On June 13, 2006, while Johnson's case was pending before the California district court, Lucent filed a petition in Pennsylvania to terminate Johnson's disability benefits. Lucent alleged that since 2003, Johnson had failed to provide, in violation of the 1990 court order, quarterly documentation that he was receiving ongoing treatment. Lucent further alleged that since 2002, Johnson failed to provide medical evidence that he was under a physician's care and that he followed the recommended course of treatment, in violation of Lucent's long-term benefit plan.

In response, Johnson, again *pro se*, stated that he had been seeing a new doctor, Dr. Shamie, since 2003, but he had been having difficulty paying for treatment because the doctor was not an in-network provider under Lucent's health plan. Johnson provided, among other exhibits, a letter from Dr. Shamie, dated May 8, 2006, stating that Johnson had been under his care since August 2003. Also attached was a form completed by Dr. Shamie on June 21, 2006, describing Johnson's current condition as "still under the influence of thoughts of not trusting others," his diagnosis as "paranoid psychosis (NOS)," and his subjective symptoms as "being paranoid not trusting others. Thinking that there was a conspiracy from AT&T against him."[2] Johnson also provided a June 19, 2006, letter from the then-administrator of Lucent's plan informing him that it could not authorize reimbursement for Dr. Shamie's bills because the plan did not allow reimbursement for outpatient treatment with an out-of-network provider when in-network providers were available.

---

[2]The form has no rubric for current treatment or medication.

In September 2006, following a telephone conference with the parties, the Pennsylvania district court ordered Lucent to send Johnson the documents he and his psychiatrist needed to complete in order to comply with the court's 1989 and 1990 orders. It also ordered Johnson to complete and return the paperwork by November 6, 2006. Johnson failed to return the paperwork. On December 19, 2006, the court granted Lucent's petition to terminate Johnson's long-term disability benefits. In January 2007, Lucent stopped paying benefits.

Johnson appealed. In his notice of appeal, he stated that in July 2006, Dr. Shamie sent a form to Lucent's plan "which completed [his] file," and that Dr. Shamie refused to complete the new forms because he had already done so in July 2006. Johnson also stated that after the district court's September 2006 order, he saw two doctors, both of whom refused to complete the required forms.

On July 8, 2008, the Third Circuit denied Johnson's appeal. As relevant here, the Third Circuit noted that although Johnson contended that he provided forms to the plan in July 2006, he did not provide that information during the telephone conference preceding the district court's September 2006 order or at any time before the court entered its order terminating benefits.

Meanwhile, on June 6, 2008, Johnson filed a charge of discrimination against Lucent with the Equal Employment Opportunity Commission ("EEOC"), which dismissed the case as untimely.

## II.   The Instant Action

On August 11, 2008, Johnson, *pro se*, filed the instant action in the Los Angeles County Superior Court against Lucent and the current administrator of his disability insurance benefits, Connecticut General, alleging retaliation in vio-

lation of Title VII[3] and Section 1981[4] and intentional infliction of emotional distress ("IIED"). Johnson alleged that, "[i]n retaliation for [his] filing suit against Lucent in 2005, Alcatel-Lucent stopped disability payments December 19, 2006 alleging that plaintiff did not provide a current disability form in 2006." Johnson claimed that a proper form had been in fact on file with the plan administrator.

Lucent and Connecticut General removed the case to the District Court for the Central District of California, then filed separate motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and on statute of limitations grounds. The district court granted Lucent's motion to dismiss on the grounds that Johnson's Title VII claim was barred by his failure to file a timely charge with the EEOC, and that his § 1981 and IIED claims were time-barred under the relevant California statute of limitations, having been filed more than two years after the day when the petition to terminate benefits was filed. The court rejected Johnson's argument that the four-year statute of limitations in 28 U.S.C. § 1658(a) applies to his § 1981 claim. The court granted Johnson 30 days' leave to amend his complaint to plead fraud and medical malpractice and allege any grounds for equitable tolling or equitable estoppel.

Johnson filed an amended complaint. He added the Los Angeles Police Department ("LAPD") as a defendant and added claims for "medical benefits malpractice," "RICO charges," extortion, "psychiatric coercion," "malicious use of process," "discriminatory failure to rehire," and fraudulent concealment.

Defendants again moved to dismiss for failure to state a claim. The district court struck the claims against the LAPD and dismissed all of Johnson's other claims with prejudice.

---

[3]Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

[4]Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

The court ruled that Johnson failed to state claims for abuse of process and fraudulent concealment because Johnson personally filed the allegedly concealed June 2006 medical form from Dr. Shamie with the Pennsylvania district court. As it concerns Johnson's Title VII, § 1981, and IIED claims, the court ruled that: (1) Johnson was not entitled to equitable estoppel based on Lucent's allegedly persuading him in 1986 that a discrimination suit was unnecessary; (2) Johnson was not entitled to equitable tolling during the pendency of his appeal before the Third Circuit; and (2) Johnson was not entitled to equitable tolling because his mental disability did not rise to the level of mental incompetence.

Johnson, through counsel, appeals.

## ANALYSIS

### A.  42 U.S.C. § 1981 Retaliation Claim

A dismissal on statute of limitations grounds is reviewed de novo. *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1050 (9th Cir. 2004). A ruling on the appropriate statute of limitations is a question of law also reviewed de novo. *Northwest Airlines, Inc. v. Camacho*, 296 F.3d 787, 789 (9th Cir. 2002).

**[1]** Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Like many other federal statutes, § 1981 does not contain a statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004). In *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987), the Supreme Court held that federal courts should apply "the most appropriate or analogous state statute of limitations" to claims based on asserted violations of § 1981. *Id.* at 660. Three years later, Congress enacted a catchall four-year statute of limitations for

actions "arising under an Act of Congress enacted after the date of the enactment of this section." 28 U.S.C. § 1658 (a).[5] Section 1658 was enacted on December 1, 1990. Thus, Johnson's retaliation claim is subject to the four-year statute of limitations if it arose under an Act of Congress enacted after that date.

[2] The Supreme Court interpreted § 1658's "arising under" requirement in *Jones*. Jones and others filed a class action alleging hostile work environment, wrongful discharge, and refusal to transfer under § 1981. *Jones*, 541 U.S. at 372-73. Although § 1981, as originally enacted, had been interpreted quite expansively, the Supreme Court held in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), that the statutory right "to make . . . contracts" did not protect against post-contract formation conduct, and the right "to . . . enforce contracts" did not extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights. *Id*. at 176-78. Under *Patterson*, Jones's claims did not state violations of § 1981 as originally enacted. *Jones*, 541 U.S. at 373. In 1991, however, Congress responded to *Patterson* by adding a new subsection to § 1981 that defines the term "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See* Civil Rights Act of 1991, Pub. L. No. 102-166 § 101, 105 Stat. 1071, 1071-72 (1991). It was undisputed that Jones alleged violations of the amended statute. *Jones*, 541 U.S. at 373. The critical question, therefore, was whether the claims "ar[ose] under" the 1991 Act or under § 1981 as originally enacted for purposes of § 1658. *Id*.

---

[5]Initially, § 1658 had only one section. In 2002, Congress amended § 1658 to add a separate provision (subsection (b)) specifying the statute of limitations for certain securities claims. Corporate and Criminal Fraud Accountability Act of 2002, Pub. L. No. 107-204, § 804(a), 116 Stat. 801. The original language of § 1658 was left unchanged and is now set forth in subsection (a). *See* 28 U.S.C. § 1658(a) (2000 ed., Supp. III).

**[3]** The Supreme Court concluded that a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990—and therefore is governed by § 1658's four-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment. *Id.* at 382. Jones's claims "ar[ose] under" the amended § 1981 because the Civil Rights Act of 1991 overturned *Patterson* by defining the key "make and enforce contracts" language in § 1981 to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* at 383 (quoting 42 U.S.C. § 1981(b)).

Johnson alleges retaliation in violation of § 1981. Prior to *Patterson*, federal appeals courts (but not the Supreme Court) held, by analogizing § 1981 to § 1982 and relying on *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969) (holding that § 1982 covers retaliation claims), that § 1981 encompassed retaliation claims. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 448 (2008). *Patterson*, however, "seems in practice to have foreclosed retaliation claims"—a result consistent with the fact that victims of an employer's retaliation often have opposed discriminatory conduct taking place *after* the formation of the employment contract. *Id.* at 449. After the enactment of § 1981(b) in 1991, federal appellate courts "again reached a broad consensus that § 1981, as amended, encompasses retaliation claims." *Id.* at 451. The Supreme Court agreed with this last proposition. *Id.* at 451. To so hold, the Court rejected, among others, the argument that the 1991 amendment did not include an explicit antiretaliation provision or the word "retaliation" in the new statutory language, although Congress has included explicit antiretaliation language in other civil rights statutes. *See id.* at 453-54. In that context, the Court said:

> We believe, however, that the circumstances to which CBOCS points find a far more plausible explanation in the fact that, given *Sullivan* and the

new statutory language nullifying *Patterson*, there was no need for Congress to include explicit language about retaliation. After all, the 1991 amendments themselves make clear that Congress intended to supersede the result in *Patterson* and embrace pre-*Patterson* law. And pre-*Patterson* law included *Sullivan*. . . . Nothing in the statute's text or in the surrounding circumstances suggests any congressional effort to supersede *Sullivan* or the interpretation that courts have subsequently given that case. To the contrary, the amendments' history indicates that Congress intended to restore that interpretation.

*Id.* at 454.

Seizing on this language, Lucent argues that, in *Humphries*, the Supreme Court found the source of a retaliation claim in the original § 1981, and not in the amended version. Therefore, Lucent argues, § 1658's four-year statute of limitations does not apply to retaliation claims.

[4] We disagree. Regardless of whether § 1981 encompassed retaliation claims before *Patterson*, it certainly did not do so post-*Patterson*. *See id.* at 451, 454. The Civil Rights Act of 1991 made retaliation claims once again possible. Under *Jones*, then, retaliation claims now "ar[ise] under an Act of Congress" enacted after 1990, and the four-year statute of limitations in § 1685(a) applies.

*Taylor v. Regents of University of California*, 993 F.2d 710 (9th Cir. 1993), on which Lucent relies, is not to the contrary. *Taylor* held that California's then-one-year statute of limitations for personal injury actions governed claims brought under § 1981. *Id.* at 711. Although it was decided three years after § 1658 was enacted, *Taylor* does not mention that statute. Moreover, *Taylor* does not specify what kind of § 1981 claims were at issue there and it is incontestable that some § 1981 claims continue to be subject to the most analogous

state statute of limitations. *See Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 n.2 (9th Cir. 2008) (§ 1981 failure-to-hire claim not subject to four-year statute of limitations in § 1658 because it was cognizable under the pre-1990 version of § 1981). *Taylor*, therefore, does not provide precedent for the applicability of § 1658 to § 1981 retaliation claims.

**[5]** We hold that Johnson's § 1981 retaliation claim is subject to the four-year statute of limitations in § 1658,[6] and not the two-year statute of limitations applicable to personal injury actions pursuant to Cal. Code Civ. Pro. § 335.1. Johnson's retaliation claim is therefore timely.

## B.   Intentional Infliction of Emotional Distress Claim

Although Johnson did not specify whether his IIED claim was brought under California law or Pennsylvania law, the district court noted that the statute of limitations under either is two years. The court then held that the claim was time-barred because it accrued on the date when Lucent filed its petition to terminate benefits (June 13, 2006), whereas Johnson filed his suit on August 11, 2008.

**[6]** Because we sit in diversity as to the IIED claim, we must apply California's choice of law rules to determine the controlling substantive law, including the applicable statute of limitations. *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002) (holding that federal courts sitting in diversity must apply the forum state's choice of law rules to determine the

---

[6]In so holding, we join the Eleventh and the Seventh Circuits, the only circuits that have had the opportunity to consider the issue. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008) (retaliation claim was made possible by a post-1990 enactment, therefore it is governed by § 1658's four-year statute of limitations); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004) (retaliation claim was subject to § 1658 because it was premised on conduct which took place after the formation of plaintiff's employment contract).

controlling substantive law); *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir. 1992) (holding that a federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations).

[7] Where, as here, parties do not address choice-of-law issues, California courts presumptively apply California law. *Wash. Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1080 (Cal. 2001). Under California law, an IIED claim accrues "when the harm is inflicted." *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1292 (9th Cir. 1987) (citing *Murphy v. Allstate Ins. Co.*, 147 Cal. Rptr. 565, 575 (App. Div. 1978)). Such harm must be "severe." *Id.* Johnson claims that Lucent's cessation of benefits constituted an intentional infliction of emotional distress.

[8] Johnson could have experienced severe harm when Lucent filed its petition to terminate benefits, when the Pennsylvania district court granted the petition, or when Lucent actually stopped payment. The question of when a continuing harm grows severe enough to constitute intentional infliction of emotional distress is one of fact. *Id.* In this case the alleged harm could have become acutely severe in December 2006, when the Pennsylvania district court granted Lucent's petition, or in January 2007, when Lucent stopped paying disability benefits. Because both these events occurred less than two years before Johnson filed his complaint, we cannot conclude that as a matter of law Johnson's claim for intentional infliction of emotional distress is time-barred.

## C.  Title VII Claim

[9] Title VII requires aggrieved persons to file a complaint with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."[7] 42 U.S.C.

---

[7]The filing period is extended to 300 days if proceedings are initially instituted with a state or local government agency having the authority to grant or seek the requested relief. 42 U.S.C. § 2000e-5(e); *see Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980). Johnson does not allege in his pleadings that state proceedings were instituted.

§ 2000e-5(e); *see Delaware State College v. Ricks*, 449 U.S. 250, 256 (1980). Filing a timely charge of discrimination with the EEOC is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

Johnson filed his charge with EEOC on June 6, 2008, more than 180 days from the date when Lucent filed its petition to terminate benefits, the date of the Pennsylvania district court's order granting the petition, or the date when Lucent stopped paying benefits. The EEOC consequently dismissed Johnson's case as untimely. Before the district court, Johnson argued unsuccessfully that the 180-day period was equitably tolled during the pendency of his appeal before the Third Circuit and for the period of his alleged mental incompetence. He further argued that Lucent's allegedly fraudulent concealment of Dr. Shamie's form during the pendency of its petition before the Pennsylvania district court requires equitable estoppel of the 180-day filing period. Where the facts are undisputed, the district court's determination of whether equitable estoppel or equitable tolling applies is reviewed for abuse of discretion. *Hensley v. United States*, 531 F.3d 1052, 1056 (9th Cir. 2008).

*Equitable Estoppel*. This doctrine "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (internal quotations and emphasis omitted).

**[10]** Johnson's equitable estoppel theory is that Lucent failed to bring to the Pennsylvania district court's attention Dr. Shamie's June 2006 form, which allegedly satisfied the requirements of the 1989 and 1990 court orders. The form, however, was in Johnson's possession and was submitted to the court by Johnson himself. Lucent did not prevent Johnson from bringing the form to the court's attention. The district court did not abuse its discretion in holding that Lucent is not

equitably estopped from relying on Johnson's failure to file his charge of discrimination in the 180-day period.

*Equitable Tolling; Pursuit of Alternative Remedies*. The Supreme Court's decision in *Ricks* offers guidance on when equitable tolling applies. Ricks, a black Liberian, challenged his denial of tenure by the defendant college as discriminatory pursuant to Title VII. 449 U.S. at 252. On the date that Ricks was formally notified of the denial of tenure, he was offered a "terminal" contract to teach an additional year in a non-tenured capacity. *Id*. at 253. Meanwhile, Ricks filed a grievance, which was denied shortly after the formal notification of denial of tenure. *Id*. at 253-54.

Relying on the allegations of the complaint, the Court determined that the challenged employment practice was the decision to deny tenure. *Id*. at 257. The EEOC, in an amicus brief, contended that Ricks' claim accrued not when he was notified that he was denied tenure, but when he was notified that his grievance had been denied. *Id*. at 260. The Court rejected the argument. First, it held that the decision to deny Ricks tenure was not in any respect tentative, as "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Id*. at 261. Second,

> the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. . . . The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.

*Id.*

Similar to the denial of tenure decision in *Ricks*, the Pennsylvania district court's order terminating benefits was not

tentative—as confirmed by the fact that Lucent stopped payment soon afterward—and the appeal before the Third Circuit was to provide a remedy for that decision. *See id.* Johnson was also not required to exhaust the appeal before filing his charge of discrimination with the EEOC. *See id.* In fact, despite arguing that the appeal should toll the statute of limitations, Johnson did not wait for his appeal to conclude before filing with the EEOC and the filing of his complaint.

**[11]** The district court did not abuse its discretion in holding that Johnson's pursuit of the appeal before the Third Circuit did not toll the 180-day period for filing a charge of discrimination with the EEOC.

*Equitable Tolling; Mental Incompetence.* Mental incompetence may equitably toll administrative deadlines if a plaintiff meets a two-part test. *Bills v. Clark*, 628 F.3d 1092, 1099 (9th Cir. 2010); *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). First, a plaintiff "must show his mental impairment was an 'extraordinary circumstance' beyond his control" by demonstrating the impairment was so severe that either "(a) plaintiff was unable rationally or factually to personally understand the need to timely file, or (b) plaintiff's mental state rendered him unable personally to prepare [a complaint] and effectuate its filing." *Bills*, 628 F.3d at 1099-1110. Second, the plaintiff "must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances . . . ." *Id*. at 1110.

The district court rejected Johnson's allegations of mental impairment in light of his actions, including his involvement in the Pennsylvania district court action and the appeal before the Third Circuit. Johnson contends, however, that his allegations, at the pleading stage, should be taken as true and that he should be given the opportunity to prove them.

On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the

nonmoving party. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Here, Johnson alleged that he was "forced" on mental disability for twenty years, that he is "unable to manage his day-to-day affairs and, therefore, [is] of unsound mind." Before this suit was filed, however, Johnson actively participated in litigation before the Pennsylvania district court and the Third Circuit, and sued Lucent, most recently in 2005. Whatever inferences might otherwise be allowable based on Johnson's receiving of disability benefits, they are not warranted in light of Johnson's proven ability to advance and protect his legal interests.

**[12]** The district court did not abuse its discretion in rejecting Johnson's argument for equitable tolling premised on mental incompetence.

### D. Fraudulent Concealment and Abuse of Process Claims

The district court dismissed Johnson's fraudulent concealment and abuse of process claims without leave to amend because Johnson's allegations could not, as a matter of law, support claims of fraudulent concealment and abuse of process, and amendment would have been futile. Both dismissals for failure to state a claim and dismissals without leave to amend are reviewed de novo. *See id.*; *Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1110 (9th Cir. 2005).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. Because Johnson proceeded *pro se* before the district court, we must construe his complaints liberally even when evaluating it under the *Iqbal* standard. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Furthermore, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (internal quotation marks omitted).

*Abuse of Process*. "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Booker v. Rountree*, 66 Cal. Rptr. 3d 733, 736 (2007) (quoting *Rusheen v. Cohen*, 128 P.3d 713, 718 (Cal. 2006)). " 'Process,' as used in the tort of 'abuse of process,' has never been limited to the strict sense of the term, but instead has been interpreted broadly to encompass the entire range of 'procedures' incident to litigation." *Id*. (quoting *Barquis v. Merchants Collection Assn.,* 496 P.2d 817, 824 n.4 (Cal. 1972)).

In his complaint, Johnson alleged that Lucent allowed the Pennsylvania district court and the Third Circuit to believe that he had never provided the plan administrator with a proper medical form. In fact, Johnson alleged, Dr. Shamie had completed the form and Lucent indicated to Johnson in September 2006 that the form satisfied its requirements. Johnson concedes that he himself submitted Dr. Shamie's form to the court, but contends that Lucent allowed it to remain buried in the record and never disclosed to the court that the form satisfied Johnson's obligations.

First, Johnson's own submission of Dr. Shamie's form to the court forecloses his claim of abuse of process premised on Lucent's failure to emphasize the importance of this document. Second, even taking as true Johnson's allegations that

Lucent told him in September 2006 that Dr. Shamie's form satisfied Johnson's obligations, the fact remains that Lucent moved forward with the termination petition, thus giving Johnson clear notice of its position in the litigation. Furthermore, Johnson had the opportunity to inform the Pennsylvania court about Lucent's alleged misrepresentations before the court ordered, in September 26, 2006, that Johnson fill out certain paperwork, or at any other time before the court issued its order terminating benefits because of Johnson's failure to comply with its earlier order.

**[13]** Johnson cannot show, as a matter of law, that he suffered any injury from Lucent's alleged misrepresentations (and not from his own failure to inform the court about them).

*Fraudulent Concealment.* This claim is also premised on the alleged misrepresentations by Lucent regarding the sufficiency of Dr. Shamie's form. Under California law, the elements of a cause of action for fraudulent concealment are: "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1156 n.3 (9th Cir. 2000).

**[14]** Johnson cannot, as a matter of law, prevail on this claim. If his argument is that Dr. Shamie's form was indeed sufficient, then Lucent disclosed this to him (although not to the court). If, on the other hand, his argument is that Dr. Shamie's form was insufficient, but Lucent let him believe it was, Lucent's proceeding with the termination petition following the alleged misrepresentations means that Johnson cannot meet the requirement that he be unaware of the material fact.

The district court correctly held that Johnson failed to state claims for abuse of process and fraudulent concealment.

Although Johnson argues that he should have been granted leave to amend these claims, he failed to alert the court as to what new facts he would have alleged. We fail to see how Johnson could have amended his pleadings to cure their deficiencies without contradicting the factual allegations in his complaint. Leave to amend would have therefore been futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

## CONCLUSION

In light of the foregoing, we hold that the district court erred in applying to Johnson's § 1981 retaliation claim the two-year statute of limitations governing personal injury claims under California law, and not the four-year statute of limitations under § 1658. Under the proper statute of limitations, the claim is timely. The district court also erred in ruling that, as a matter of law, Johnson's IIED claim is time-barred. The district court, however, correctly dismissed the Title VII, abuse of process, and fraudulent concealment claims.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED.**