
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITIZENS LEGAL ENFORCEMENT AND RESTORATION, an unincorporated California nonprofit association, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> MICHAEL L. CONNOR, Commissioner of the Bureau of Reclamation; SALLY JEWELL, Secretary of the Interior; NEIL KORNZE, Acting Director of the Bureau of Land Management; DAN ASHE, Director of the Fish and Wildlife Service; JILL JOHNSON, in her official capacity as President of the Board of the Palo Verde Irrigation District; ED SMITH, in his official capacity as General Manager of the Palo Verde Irrigation District, <br><br> Defendants - Appellees. | No. 11-55380 <br><br> D.C. No. 3:06-cv-02368-JLS-WMC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted February 4, 2013
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: PREGERSON, W. FLETCHER, and NGUYEN, Circuit Judges.

During the 1950s and 60s, the Bureau of Reclamation ("Reclamation") built a diversion dam, known as the Pretty Water Levee, at the top of a river meander on the lower Colorado River. At the same time, Reclamation constructed an artificial channel below the Levee, known as the Cibola Cut, into which the river was diverted. The river rejoins its natural bed at the bottom of the Cut, about twelve miles downstream from the Levee. The construction of the Levee and the Cut have reduced erosion of the river bank, reduced sediment load in the river, and helped control floods. Except for an insignificant amount of seepage through the Levee, the old river channel ("ORC") no longer receives water from the river. The only water the ORC receives is from the Palo Verde Drain, which collects and delivers water from a large irrigation system west of the river. The lowering of the water level in the ORC due to the diversion of the river has improved outflow from the Drain, but the volume of water from the Drain is a very small fraction of the volume of river water that ran through the ORC before construction of the Levee.

The plaintiff in this case, Citizens Legal Enforcement and Restoration ("CLEAR"), comprises individuals who live and own property along the ORC. At the time of construction of the Levee and the Cut, Reclamation stated that it would

implement recommendations from the U.S. Fish and Wildlife Service ("FWS") to mitigate the negative impacts on wildlife and recreational resources in the ORC resulting from the diversion of the river. However, Reclamation has failed to implement many of these recommendations. In about 2001, Reclamation made plans to install several culverts in the Levee that would allow some water to flow from the river into the ORC. These culverts were never installed. Community members have repeatedly requested maintenance in the ORC by Reclamation. Such maintenance has been sporadic.

CLEAR eventually filed suit based on alleged violations of state water and wildlife conservation laws, contending that these laws are binding on defendants under Section 8 of the federal Reclamation Act, 43 U.S.C. § 383. The district court granted summary judgment to defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

To the extent that CLEAR seeks to challenge the original plan and construction of the Pretty Water Levee and the Cibola Cut, it is barred by the six-year statute of limitations applicable to APA claims. *See* 28 U.S.C. § 2401(a); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 712-13 (9th Cir. 1991). However, to the extent CLEAR challenges Reclamation's alleged failure to manage and operate the Levee and the ORC on an ongoing basis in accordance

3

with applicable law, and seeks prospective relief to correct such failures, its claims are not time-barred. *Cf. Hells Canyon Pres. Counc. v. United States Forest Service*, 593 F.3d 923, 932-33 (9th Cir. 2010).

A failure-to-act claim under the APA may be brought only to enforce "a *discrete* action." *Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 63 (2004) (emphasis in original). An APA claim cannot be brought for an agency's failure to comply with a general mandate. *Id.* at 66-67. CLEAR asserts three claims that are applicable to the defendants, if at all, under the APA and Section 8 of the Reclamation Act: violation of the public trust, violation of the California Constitution, and violation of California Fish and Game Code § 5937. The public trust and state constitutional claims are based on allegations that Reclamation is failing to comply with broad mandates, such as obligations to consider the public interest and not to unreasonably waste water. Such claims do not seek to enforce "discrete" actions, as required under *SUWA*. *See, e.g., Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1113 (9th Cir. 2005).

Although the matter is not entirely free from doubt, we conclude that § 5937 of the Fish and Game Code does not apply to the Pretty Water Levee. Section 5937 obligates an owner of a dam to allow sufficient water to pass through a fishway, or in the absence of a fishway to pass over, around or through the dam, in

4

order to keep in good condition any fish that may be planted or exist below the dam. Section 5937 clearly applies to a dam that impounds water, using some or all of the water for agriculture and releasing whatever water is left into the natural riverbed below the dam. *See*, *e.g.*, *Natural Res. Def. Council v. Patterson*, 333 F. Supp. 2d 906 (E.D. Cal. 2004). But we are not convinced that § 5937 applies to a levee whose sole function is to divert the entire flow of the river into a man-made channel that rejoins the natural riverbed at the end of the channel.

We therefore affirm the district court. We feel constrained to note, however, the Reclamation has not lived up to various representations it has made to members of CLEAR and their predecessors in interest. Because of the construction of the Levee and Cut, the watercourse in the ORC has been transformed from a free flowing river into a shallow, slow moving, weed-obstructed, warm-water slough. Reclamation has the authority to install culverts in the Levee that would allow the flow of river water through the ORC, thereby restoring some of its former health and beauty. We are powerless in this suit to compel Reclamation to do what plaintiff asks. But we hope that, with political encouragement and appropriate funding, Reclamation will at some point see its way clear to do on its own what we are powerless to compel.

**AFFIRMED.**

*Citizens Legal Enforcement and Restoration v. Connor*, No. 11-55380

NGUYEN, J., concurring in part and concurring in the result:

I agree with the majority that CLEAR's claims for prospective relief are not time-barred and that its public trust and state constitutional claims impermissibly seek to compel agency compliance with broad statutory mandates rather than discrete actions. Unlike the majority, however, I do not think that the plain text of California Fish and Game Code § 5937 limits its application in this case. The statute says nothing about the purpose for which the dammed water is to be used. A dam is defined broadly to "include[] all artificial obstructions." Cal. Fish & Game Code § 5900(a).

I agree with the result, however, because Section 8 does not apply here. State law cannot dictate the structural or operational requirements of a federal levee that crosses the California-Arizona border in such a way that would affect the interstate flow of water along the lower Colorado River through the Cibola Cut. *See California v. United States*, 438 U.S. 645, 674 & n.29 (1978) ("[T]he [Boulder Canyon] Project Act 'plainly allows the States to do things not inconsistent with the Project Act or with federal control of the [lower Colorado] river.'" (quoting *Arizona v. California*, 373 U.S. 546, 588 (1963))).

1