**MANALIS FINANCE CO., a co-partnership, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV 74–212–WMB.**

United States District Court, C. D. California.

Aug. 9, 1977.

Kirsch, Arak & Bulmash, Jay S. Bulmash, Beverly Hills, Cal., for plaintiff.

Robert L. Brosio, U.S. Atty., Charles H. Magnuson, Asst. U.S. Atty., Chief, Tax Division, Arthur M. Greenwald, Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM

WM. MATTHEW BYRNE, Jr., District Judge.

This action came on for trial upon stipulated facts before the Honorable Wm. Matthew Byrne, Jr. The Court has considered the stipulated facts and exhibits, the pleadings and other papers submitted by counsel, and counsels' presentations at trial. This memorandum of decision incorporates the stipulated facts and exhibits filed in this action, and shall constitute the Findings of Fact and Conclusions of Law as permitted under Rule 52(a), Federal Rules of Civil Procedure.

## SUMMARY OF FACTS

The facts giving rise to this litigation involve four entities. GAB Corporation, doing business as Manchester Community Hospital ("GAB Hospital"), not a party, was a provider of medical services during the time period relevant to this litigation, and was entitled to receive payments from the state of California under the "Medi-Cal" program. Blue Shield, also not a party, acted for the state in making Medi-Cal payments to providers, and was responsible for making the payments to GAB Hospital.

In order to finance its hospital operations, GAB Hospital entered into a factoring agreement with plaintiff Manalis Finance Co. ("Manalis") under which Manalis would lend money to GAB Hospital, and in return would take an assignment of GAB Hospital's receivables, including the amounts receivable from Blue Shield. The assignment was perfected as a security interest under California law in 1971.

In 1973 and 1974, defendant United States made assessments for unpaid employment taxes against GAB Hospital, and thereby obtained a tax lien on Manalis's "property and rights to property." 26 U.S.C. § 6321. To satisfy the assessments, the United States subsequently made two levies upon the Medi-Cal payments owed by Blue Shield to GAB Hospital. Blue Shield has paid $22,493.91 to the United States pursuant to the first levy, and holds another $52,280.40, subject to a supplemental levy, pending the outcome of this litigation.

At issue in this case are the competing claims of the United States, by way of its tax lien, and of Manalis, by way of its security interest, to the Medi-Cal payments to which GAB Hospital was entitled from Blue Shield.

## CONCLUSIONS OF LAW

Manalis brings this action under 26 U.S.C. § 7426(a), which permits "any person . . who claims an interest in or lien on" property upon which the United States has asserted a tax levy to sue the United States for wrongful levy. This court has jurisdiction under that statute and 28 U.S.C. §§ 1340, 1346.

■ The question of when a state-created lien or other interest, such as Manalis's security interest, has acquired sufficient substance and has become so perfected that

it will defeat a later-arising or later-filed federal tax lien is a matter of federal law. *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). The United States concedes that if Manalis has a valid and perfected security interest, as defined by federal law, then Manalis's claims have priority over the federal tax lien and the levies by the United States are wrongful.

The relevant definition of a security interest under federal law is contained in 26 U.S.C. § 6323(h)(1):

A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

The United States does not question that the "property in existence" and "money's worth" provisions of the statute are met, but asserts only that Manalis's prior interest was not "protected under local law."

The local law under which the United States seeks to avoid Manalis's security interest is California Welfare and Institutions Code § 14115.5, which provides:

Moneys payable or rights existing under this chapter shall be subject to any claim, lien or offset of the State of California, and any claim of the United States of America made pursuant to federal statute, but shall not otherwise be subject to execution, levy, attachment, garnishment, or other legal process, and no transfer or assignment, at law or in equity, of any right of a provider of health care to any payment shall be enforceable against the state, a fiscal intermediary or carrier.

The United States contends that Manalis has no security interest in the Medi-Cal payments that is "protected under local law" and superior to the federal tax lien, because the assignment giving rise to the purported security interest is not "enforceable" against the United States under this statute.

The statute may be divided into two parts. The first part provides that the state and the United States, but no other persons or entities, may make claims against "moneys payable" under Medi-Cal. This provision frees paying entities, such as Blue Shield, from legal process regarding Medi-Cal payments, except process initiated by the state or the United States. Since the federal tax levies asserted here are process initiated by the United States, they are permitted by the statute. The first part of the statute therefore allows the federal tax levies to be asserted, but says nothing about the priority of the claims of the United States upon which the tax levies are founded.

The second part of the statute provides that a health-care provider's assignment of its right to receive Medi-Cal payments is not enforceable against the state, a fiscal intermediary or a carrier. As compared with the foregoing, the purpose of this part of the statute is less clear. The provision can be read to free paying entities—the state, a fiscal intermediary or carrier—from competing claims, brought by assignors and assignees, to the right to Medi-Cal payments. Under this interpretation, both the first and second parts of the statute protect paying entities: the first part protects against legal process, and the second part protects against attempts to enforce assignments. Since an attempt to enforce an assignment would often involve legal process, the parts overlap.[1]

The United States urges a different interpretation of the second part of the statute, in accordance with dictum in an opinion by a California court, *Manalis Finance Co. v. Gedulig*, 47 Cal.App.3d 672, 121 Cal.Rptr. 93 (1975). The facts in *Gedulig* are similar to the facts in this case, except that *Gedulig*

---

1. However, the parts are not coextensive. The first part refers to "moneys payable or rights" being "subject to" legal process, thus preventing claims against a Medi-Cal payment *res* held by a paying entity. On the other hand, the second part bars suit against a paying entity by an assignee when wrongful payment was made to the assignor, even though the paying entity no longer holds the *res*.

involved state, rather than federal, tax levies. The court held that the state tax lien had priority because the competing security interest was based solely on a factor's rights as assignee, which rights are not "enforceable against the state" under Section 14115.5. The court went on to say in a footnote that:

> The statute does not declare the assignment void as between the parties [assignor and assignee]. It is limited to the situation of unenforceability of an assignment in a manner which will defeat a claim of the state or the United States.

121 Cal.Rptr. at 95 n. 1. The United States would probably prevail here if this reasoning were followed.[2]

This court is not bound by the decision of the state Court of Appeal, *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), and declines to follow its dictum, which marks two unacceptable departures from the express language of the statute.

First, the dictum substitutes the words "the state or the United States" for the statute's "the state, a fiscal intermediary or carrier" as those entities against which an assignment cannot be enforced. There is no basis for this judicial amendment of the clear language of Section 14115.5. The statute neither directly nor by inference, renders assignments unenforceable against the United States.

■ Second, the California court asserts in its footnote that the purpose of the second part of the statute is to prevent the "defeat [of] a claim" of the state or the United States. The statute, however, says nothing about claims brought *by* the enumerated entities, but rather provides that assignments are not enforceable *against* the entities. While this court does not rely

heavily on whether an entity seeking protection under the statute is a plaintiff or defendant, the court does find that a fair inference from the language is that the legislature intended to protect the enumerated entities in their roles as holders and payors of Medi-Cal benefits. Here, the United States asks much more. It invokes the statute's protection, not as a Medi-Cal paying entity defending against a claim, but as a tax lienor in an unrelated matter seeking to have its interest declared superior to the interest of any assignee, no matter how or when the assignee's interest arose. The court finds it unlikely that the California legislature intended, by a statute in the Welfare and Institutions Code, to grant rights to the United States as tax lienor that are uncontestably superior to the rights of a provider's assignee.

■ The court concludes that Manalis has a valid security interest protected under local law and prior to the interest of the United States. Thus, the levies by the United States are wrongful. Manalis is entitled to recover the sum held by the United States pursuant to the levy, and is declared to have an interest prior to that of the United States in the subject funds now held by Blue Shield.

---

2. It appears the United States would prevail because the dictum extends the list of entities against which an assignment cannot be enforced to include the United States. However, even if the dictum is accepted, the defense of the United States might fail. Under the federal-law definition of security interest, Manalis's interest exists if it is protected against "a subsequent judgment lien." 26 U.S.C. § 6323(h)(1) (emphasis added). The United States contends that Manalis's interest does not exist because it is not protected against *its* (the United States's) subsequent tax lien, under the *Gedulig* dictum. Therefore, the United States's defense, based on *its* lien, does not correspond exactly to § 6323(h)(1), which speaks of *a* lien. The parties have not raised this issue and the court does not resolve it.