**MANALIS FINANCE CO., a co-partnership, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 78–1130.

United States Court of Appeals, Ninth Circuit.

Jan. 15, 1980.

Daniel F. Ross, Washington, D. C., for defendant-appellant.

Jay S. Bulmash, Kirsch, Arak & Bulmash, Beverly Hills, Cal., argued, for plaintiff-appellee; Stephen J. Swift, San Francisco, Cal., on brief.

Before WRIGHT, SNEED and FARRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This appeal involves conflicting claims to Medi-Cal funds owed Manchester Community Hospital. The dispute is between Manalis, a lender holding a perfected security interest in the hospital's accounts receivable, and the United States, which claims the money under a federal tax lien resulting from the hospital's failure to pay federal employment taxes.

The government appeals from a decision that, under I.R.C. § 6323, the security interest had priority over the federal tax lien. It contends that the district court erred in its interpretation of § 14115.5 of the California Welfare and Institutions Code, which concerns an assignee's right to assert a claim to Medi-Cal funds. In addition, it asserts that the court's application of I.R.C. § 6323 was erroneous. This court's jurisdiction derives from 28 U.S.C. § 1291.

We conclude that the district court correctly interpreted and applied both statutes and we affirm its decision.

## FACTS

Manchester Community Hospital, owned by GAB Corporation, borrowed money from Manalis, assigning its accounts receivable as collateral and security for the loan. A U.C.C. financing statement reflecting this assignment was filed in California in 1971. The statement served to perfect Manalis' security interest. Cal.Com.Code § 9302.

Funds owed by Medi-Cal were included in the hospital's accounts receivable. These funds were to be paid out by Blue Shield as a fiscal intermediary for the state in the administration of the Medi-Cal program.

The hospital failed to pay its state and federal employment taxes in 1972–73. To compensate for the state tax deficiency, California levied upon and received from Blue Shield $14,384.37 that had been owed the hospital by Medi-Cal. Manalis sued in state court to recover the funds, asserting that its prior right to them was established by its perfected security interest.

The state trial court held for the state and was affirmed by the state Court of Appeal in *Manalis Finance Co. v. Gedulig*, 47 Cal.App.3d 672, 121 Cal.Rptr. 93 (1975). The basis for the latter's decision was § 14115.5 of the California Welfare and Institutions Code, which says:

> Moneys payable or rights existing under this chapter [Basic Health Care] shall be subject to any claim, lien or offset of the State of California, and any claim of the United States of America made pursuant to federal statute, but shall not otherwise be subject to execution, levy, attachment, garnishment, or other legal process, and no transfer or assignment, at law or in equity, of any right of a provider of health care to any payment shall be enforceable against the state, a fiscal intermediary or carrier.

The Court of Appeal found the statute precluded Manalis from enforcing its assignment of Medi-Cal funds against the state of California. It also found the statute to be constitutional, despite Manalis' equal protection and due process challenges. In the course of its discussion of the constitutional issues, the court commented in a footnote:

> The statute does not declare the assignment void as between the parties. It is limited to the situation of unenforceability of an assignment in a manner which will defeat a claim of the state or the United States.

47 Cal.App.3d at 676 n.1, 121 Cal.Rptr. at 95 n.1. The California Supreme Court declined to review the case.

Like California, the government levied upon the Medi-Cal money owed the hospital to obtain the employment taxes owed it. It received $22,493.91 from Blue Shield in 1973 and claims another $52,280.40 still held by Blue Shield. Manalis brought suit against the United States in federal district court, asserting its prior right to the funds because of its perfected security interest. The district court agreed with Manalis.

Although the *Gedulig* footnote indicated to the contrary, the district court found that § 14115.5 did not make Manalis' claim unenforceable against the United States. Moreover, it found that Manalis' interest was properly a "security interest" under I.R.C. § 6323(h)(1) and therefore prior to the government's subsequent tax lien under § 6323(a), *Manalis Finance Co. v. United States,* 442 F.Supp. 579 (C.D.Cal.1977).

On appeal, the government makes essentially two claims: (1) that the district court erred in interpreting § 14115.5 contrary to the ruling of the state court; and (2) that the district court erred in finding that Manalis' security interest met the definitional requirements of § 6323(h)(1).

## DISCUSSION

### Section 14115.5

The government argues that the district court erroneously failed to follow the California Court of Appeal's decision on § 14115.5 in two respects. First, it did not defer to the holding of *Gedulig.* The state court had held the state's tax claim to be prior to Manalis' security interest. The federal court said in dictum that § 14115.5 protected the state only in its capacity as Medi-Cal payor. Because this contention is not relevant to our decision, we discuss it no further.

Second, the district court did not defer to dictum in *Gedulig* (in the footnote quoted above) to the effect that § 14115.5 would make an assignment of Medi-Cal funds unenforceable against a federal claim. The government contends that the district court was bound by the state court opinion.

### 1. Deference to state court

In *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), the Supreme Court said that, when application of a federal statute depends on an issue of state law, a federal court should defer to the ruling of the highest court of the state on that issue. Absent such a decision by the highest state court,

> federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court.

*Id.* at 465, 87 S.Ct. at 1783, citing *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

The district court cited *Bosch* to support the statement that it was "not bound by the decision of the state Court of Appeal." 442 F.Supp. at 582. The government argues that the court misapplied *Bosch* and should have applied a test such as that in *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), which says:

> An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.

*Id.* at 177–78, 61 S.Ct. at 178.

This circuit has used language similar to that in *Fidelity Union Trust. See, e. g., Community Nat. Bank v. Fidelity & Deposit Co.,* 563 F.2d 1319, 1321 n.1. (9th Cir. 1977); *Klingebiel v. Lockheed Aircraft Corp.,* 494 F.2d 345, 346 n.2 (9th Cir. 1974). Recently it has also quoted and applied the *Bosch* standard. *See Lewis v. Anderson,* slip op. 457 (9th Cir. Oct. 29, 1979); *Preaseau v. Prudential Insur. Co.,* 591 F.2d 74, 82 n.9 (9th Cir. 1979).

Under either standard the district court's analysis of § 14115.5 was proper.

## 2. *The Gedulig dictum*

■ We agree with the district court's observation that:

the dictum substitutes the words "the state or the United States" for the statute's "the state, a fiscal intermediary or carrier" as those entities against which an assignment cannot be enforced. There is no basis for this judicial amendment of the clear language of Section 14115.5.

442 F.Supp. at 582.

The *Gedulig* dictum can hardly be called "considered dictum." *Cf. Rocky Mountain Fire & Casualty Co. v. Dairyland Insur. Co.,* 452 F.2d 603, 603–04 (9th Cir. 1971) ("A federal court exercising diversity jurisdiction is bound to follow the considered dicta as well as the holdings of state court decisions.") The state court inserted the footnote only to explain that § 14115.5 would not render an assignment of Medi-Cal funds void or unenforceable in all instances. The footnote was not intended to be a definitive resolution of the statute's meaning with reference to federal claims.

■ There was no error in the district court's interpretation of § 14115.5.

### Section 6323

I.R.C. § 6323 sets forth the priority rules to be used when a federal tax lien has been imposed. The statute was significantly amended by the Federal Tax Lien Act of 1966. A primary purpose of the Federal Tax Lien Act was "to conform the lien provisions of the internal revenue laws to the concepts developed in [the] Uniform Commercial Code" and thereby to "[improve] the status of private secured creditors." H.R.Rep.No.1884, 89th Cong., 2d Sess. 1–2 (1966).

■ At issue in this case is § 6323(h)(1). Section 6323(a) provides that an unfiled tax lien is not valid as against a prior security interest, and § 6323(h)(1) defines "security interest" as:

any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

The government argues that Manalis' interest is not a "security interest" because it is not "protected under local law against a subsequent judgment lien." It relies on language from *Dragstrem v. Obermeyer,* 549 F.2d 20, 26 (7th Cir. 1977), to the effect that § 6323(h)(1) requires the security interest to be protected against "any hypothetical judgment lien creditor." *Gedulig* held that Manalis security interest was not protected against the state, which thereby becomes a hypothetical judgment lien creditor. Therefore, the government asserts, the security interest cannot be accorded priority under § 6323.

We do not agree with that interpretation of § 6323(h)(1). *Dragstrem* is distinguishable. The question there was whether an unperfected security interest could be prior to a federal tax lien when the United States had actual knowledge of the security interest at the time it filed the lien. Here Manalis' security interest was properly perfected.

Other courts have indicated that the definition in § 6323(h)(1) encompasses perfected security interests. In *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), the Supreme Court said in dictum that "the Code specifically subordinates tax liens to the interests of certain others in the property, generally including those with a perfected security interest in the property." *Id.* at 256–257, 98 S.Ct. at 1790. In a footnote, the Court observed that "Under the UCC, a perfected security interest is superior to a judgment lien creditor's claim in the property, see UCC §§ 9–301; 9–312." *Id.* at 258 n.22, 98 S.Ct. at 1790 n.22. The Court thus linked the language of § 6323(h)(i)(A) with the notion of perfection under the U.C.C.

The Fifth Circuit also has said that "§ 6323 specifically subordinates federal tax liens to security interests . . . that are perfected under the U.C.C. provisions of state law prior to the filing of the tax lien." *Aetna Insur. Co. v. Texas Thermal Industries, Inc.,* 591 F.2d 1035, 1038 (5th Cir. 1979).

Treasury regulations also indicate that § 6323(h)(1) was meant to include perfected interests. Treas.Reg. § 301.6323(h)–1(a)(2) (1976) says "a security interest is deemed to be protected against a subsequent judgment lien on the date on which all actions required under local law to establish the priority of a security interest against a judgment lien have been taken." The phrase "actions required under local law to establish the priority of a security interest" generally describes the process of perfection.

Finally, the government's interpretation of § 6323(h)(1) is contrary to Congress' intent, expressed in the Federal Tax Lien Act, to improve the position of the private secured creditor in the face of a federal tax lien on the secured property. If § 6323(h)(1) requires the security interest to be protected against "any hypothetical judgment lien creditor," then *no* security interest perfected under the U.C.C. would qualify. Sections 9–307 through 9–310 of the U.C.C. describe various situations in which prior, perfected security interests can be defeated by a subsequent claim to the secured property.

There was no error in the district court's interpretation or application of § 6323.

*AFFIRMED.*