NGUYEN, Circuit Judge, dissenting: “Economic reality dictates” that this consumer lawsuit “proceed as a class action or not at all.”’ Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 161, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). By championing the cause of a handful of objectors and their attorneys (who were denied fees below) to decertify the class, the majority deprives thousands of consumers of any chance to recover what is, conservatively speaking, a more than $159 million settlement.[1] In doing so, the majority relies on arguments never raised by the objectors, contravenes precedent, and disregards reasonable factual findings made by the district court after years of extensive litigation. The majority also deals a major blow to multistate class actions. Contrary to our case law and that of our sister circuits, the majority shifts the burden of proving whether foreign law governs class claims from the foreign law proponent—here, the objectors—to the district court or class counsel. This newly invented standard significantly burdens our overloaded district courts, creates a circuit split, and runs afoul of the doctrine established long ago in Ene R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Next, in excluding used car owners from the class, the majority misapplies the rule that consumer claims merely require proof that the public—not any individual—is likely to be deceived. Lastly, the majority bases its clarification of the district court’s attorneys’ fees award on a flawed reading of the record and a disregard of our usual deferential review. I. Rule 23’s predominance inquiry was readily met Both we and our sister circuits have long held that a nationwide class action cannot be decertified simply because there are “differences between state consumer protection laws.” Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022-23 (9th Cir. 1998); In re Mex. Money Transfer Litig., 267 F.3d 743, 747 (7th Cir. 2001) (“[N]ationwide classes are certified routinely even though every state has its own [laws.]”). Far from imposing geographic limitations, the predominance inquiry under Rule 23(b)(3) simply tests whether questions common to the class “are more prevalent or important” than individual ones, Tyson Foods, Inc. v. Bouaphakeo, — U.S. —, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016) (citation omitted), a standard which is “readily met” in consumer class actions, Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). “Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class.” Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1134 (9th Cir. 2016) (citation omitted). Therefore, even if just one common question predominates, “the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.” Tyson, 136 S.Ct. at 1045 (citation omitted). Here, the district court concluded that the following undisputed common questions predominated over individualized issues: “[w]hether the fuel economy statements were in fact accurate” and “whether defendants knew that their fuel economy statements were false or misleading.” The district court also found that the class claims were subject to common proof because the fuel economy statements were “uniformly” made by Defendants via “Monroney stickers and nationwide advertising.” These types of common issues, which turn on a common course of conduct by the defendant, establish predominance in nationwide class actions. Hanlon, 150 F.3d at 1022-23 (affirming certification of a nationwide settlement class of car owners because common questions as to defendant’s knowledge and existence of the problem predominated over state law variations); Edwards v. First Am. Corp., 798 F.3d 1172, 1182-83 (9th Cir. 2015) (reversing denial of a nationwide consumer class certification because the defendants’ “common scheme, if true, presents a significant aspect of [defendants’] transactions”). Neither the objectors nor the majority adhere to these precedents. II. Neither the district court nor class counsel had a duty to raise arguments on objectors’ behalf, nor can a class action be decertified for failure to do so The majority’s first misstep in the predominance analysis is a subtle, but disposi-tive, departure from our nationwide class action jurisprudence. In violation of controlling. choice-of-law rules, the majority places the burden on the district court or class counsel to extensively canvass every state’s laws and determine that none other than California’s apply. Opinion at 691, 703. This is wrong for three reasons. First, because the objectors here bore the burden and failed to meet it, the class claims are controlled by California law. Second, the majority’s reassignment of the burden cannot be justified under Rule 23, which is silent on choice-of-law issues and requires class counsel to prove predominance, but not a negative. Nor can the majority rely on the combination of Rule 23 and CAFA diversity jurisdiction to. flip the burden. Doing so violates the Erie, doctrine, which requires a California federal court sitting in diversity jurisdiction to apply California’s choice-of-law rules, even where a federal rule is involved. Third, the majority’s heavy reliance on Amchem is misplaced because that case did not address choice-of-law issues and involved conflicts between potential claimants that are not present here. A. The objectors failed to meet their choice-of-law burden As the majority acknowledges, California’s choice-of-law rules control the outcome of this case. Opinion at 691-92, 702. Under these rules, California law applies “unless a party litigant timely invokes the law of a foreign state,” in which case it is “the foreign law proponent” who must “shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims.” Wash. Mut. Bank, FA v. Superior Court, 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1080-81 (2001) (citation omitted); Pokorny v. Quixtar, Inc., 601 F.3d 987, 995 (9th Cir. 2010). The “foreign law proponent” here, of course, is the objectors. To meet their burden, the objectors must satisfy the three-step governmental interest test. Wash. Mut., 103 Cal.Rptr.2d 320, 15 P.3d at 1080-81; Pokorny, 601 F.3d at 994-95. Under that test, the objectors must prove that: (1) the law of the foreign state “materially differs from the law of California,” Wash. Mut., 103 Cal.Rptr.2d 320, 15 P.3d at 1080-81, meaning that the law differs “with regard to the particular issue in question”; (2) a “true conflict exists,” meaning that each state has an interest in the application of its own law to “the circumstances of the particular case”; and (3) the foreign state’s interest would be “more impaired” than California’s interest if California law were applied. Kearney v. Salomon Smith Barney, Inc., 39 Cal.4th 95, 45 Cal.Rptr.3d 730, 137 P.3d 914, 922 (2006); Pokorny, 601 F.3d at 994-95. If the objectors fail to meet their burden at any step in the analysis, the district court “may properly find California law applicable without proceeding” to the rest of the analysis. Pokorny, 601 F.3d at 995 (quoting Wash. Mut., 103 Cal.Rptr.2d 320, 15 P.3d at 1081).[2] The majority faults the district court for not sua sponte surveying all 50 states’ laws to prove that none other than California’s should apply. But, to the extent anyone was obliged to analyze the laws of other states, that burden fell squarely on the objectors—and they failed to meet it. No objector even mentioned, much less conducted; the correct choice-of-law analysis. Nor did any objector explain how, under the facts of this case, they satisfied the governmental interest test’s three elements. “Where, as here, parties do hot address choice-of-law issues, California courts presumptively apply California law.” Johnson v. Lucent Techs. Inc., 653 F.3d 1000, 1008 (9th Cir. 2011). Given the objectors’ failure to prove that the law of a state- other than California applied, the district court acted well within its discretion in certifying the class. The majority acknowledges, as it must, that the objectors carry the burden. Opinion at 692. But it does not acknowledge that the' objectors entirely failed to do so here. Instead, the majority implies that a few sentences in the objectors’ opposition to class' certification constitute a developed choice of - law analysis, Opinion at 699-700. But in that opposition, the Gen■try objectors clearly argue that California contractual choice of law provisions should govern, citing explicitly to three contracts entered into by their named class representatives. “California has two different analyses for selecting which law should be applied in an action”: the contractual choice-of-law provisions analysis from Nedlloyd Lines B.V. v. Super. Ct, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992), and, “[alternatively,” the governmental interests test. Wash. Mut., 103 Cal.Rptr.2d 320, 15 P.3d at 1077. Apart from a passing reference to Washington Mutual, the objectors never even addressed the governmental interests test before the district court. They certainly did not, meet their burden of showing that foreign law should apply.[3] Our precedent recognizes that-when, as here, the foreign law proponent fails- to meet its burden, neither the district court nor class counsel is obligated to address choice-of-law issues, nor will a class action be decertified for lack of such analysis. In Harmsen v. Smith, for example, we rejected the argument that California law could not.be applied to a class -which'included non-Californians, even though the district court conducted no choice-of-law analysis. 693 F.2d 932, 946-47 (9th Cir. 1982). There, the foreign law proponent challenged the ability of non-California class members to recover under California fraud and tort claims that, like the claims here, arose from the defendants’ misrepresentations. Id. at 946, 935-37. The district court rejected the argument on a procedural ground, which we did not embrace on appeal. Id. at 946. However, we did not fault the district court for failing to raise and then refute arguments favoring another state’s law. Instead, we placed the onus where it belonged: on the foreign law proponent who “failed to show, as required by California lawj that the law of other states relating to the [class] claims is significantly different from California’s and, more importantly, that the interests of other states would be impaired by application of California law to these nonresident, plaintiffs.” Id. at 947; accord Pokorny, 601 F.3d at 994-96 (affirming application of California law because the foreign law proponent failed to meet its burden under California’s governmental interest test). This case is even more straightforward than Harmsen,. as the objectors here did not advance any argument under the governmental interest test, and therefore we must “apply California law.” Johnson, 653 F.3d at 1008. The objectors’ silence is a far cry from Mazza—the only case from this circuit to which the majority analogizes. There, the foreign law proponent (the defendant) “exhaustively detailed the ways in which California law differs from the- laws of the 43 other jurisdictions” and showed how applying the facts to those disparate state laws made “a difference in this litigation.” Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 590-91 (9th Cir. 2012). Unlike class counsel here, the plaintiffs in Mazza did “not contest these differences[.]” Id. at 591 n.3. Weighing these arguments and concessions, a divided panel concluded it was error to find that the defendant had “not met its burden” to show that foreign law applied “[u]nder the facts and circumstances of this case.” Id. at 591, 594. In light of that unique record, Mazza stands as a rare exception to the general rule that “[predominance is a test readily met” in consumer class actions. Amchem, 521 U.S. at 625, 117 S.Ct. 2231. We have never held, in Mazza or any other case,.that a class cannot be certified Unless a district court sua sponte raises and refutes arguments on the objectors’ behalf in support of foreign law. Rather, we have made clear that, if the “parties do not address choice-of-law issues, California courts presumptively apply California law.” Johnson, 653 F.3d at 1008 (emphasis added). After all, the court, as an impartial arbiter, need not do a party’s “work for it, either by manufacturing its legal arguments, or by combing the record on its behalf for factual support.” See W. Radio Servs. Co. v. Qwest Corp., 678 F.3d 970, 979 (9th Cir. 2012). Nor is any duty, triggered if a. district court becomes aware that multiple states’ laws may apply; as Mazza confirmed, the mere “fact that two or more states are involved does not itself indicate that there is a conflict of law.” 666 F.3d at 590 (quoting Wash. Mut., 103 Cal. Rptr.2d 320, 15 P.3d at 1080). The district court therefore had no duty to dig. up briefing from two years earlier in the Es-pinosa action and refashion those arguments for the objectors’ benefit. B. Under the Erie doctrine, CAFA and Rule 23 cannot reassign the foreign law proponent’s burden because it is substantive state law The majority’s reassignrhent of the burden under California’s choice-of-láw rules also violates the Erie doctrine. A federal court sitting in diversity jurisdiction must “apply the substantive law of the state in which it sits, including choice-of-law rules”—even where a federal rule or statute is involved. Harmsen, 693 F.2d at 946-47; Manalis Fin. Co. v. United States, 611 F.2d 1270, 1272 (9th Cir. 1980) (“[W]hen application of a federal statute depends on an issue of state law, a federal court should defer to the ruling of the highest court of the state on that issue.”). Because California’s choice-of-law rules are substantive state law for which the California Supreme Court is the final arbiter, the majority is not free to disregard them. Harmsen, 693 F.2d at 946-47; Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The California Supreme Court has unequivocally held that California law governs unless a foreign law proponent meets its burden to prove otherwise under the governmental interest test, Wash. Mut., 103 Cal.Rptr.2d 320, 15 P.3d at 1080-82, as we have repeatedly recognized. See, e.g., Pokorny, 601 F.3d at 995. Moreover, the California Supreme Court has made clear that the foreign law proponent bears the burden even “when a nationwide class action is at issue,” rejecting the idea that the “proponent of class certification [should] affirmatively demonstrate[ ] that California law is more properly applied.” Wash. Mut., 103 Cal.Rptr.2d 320, 15 P.3d at 1081. Yet that is exactly what the majority demands here. ■ By flouting the applicable choice-of-law rules, the majority denies relief that the class would have obtained in state court.[4] In doing so, the majority’s ruling creates exactly the “variations between state and federal” outcomes that the Erie doctrine is designed to combat. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 430, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); Beeman v. Anthem Prescription Mgmt., LLC, 689 F.3d 1002, 1005 (9th Cir. 2012) (en banc) (critiquing panel’s misapplication of state law for violating Erie by creating “inconsistent” results in state and federal courts). The Supreme Court has stressed the need to prevent inconsistent state and federal outcomes as the basis for its holding that federal courts must apply state choice-of-law rules. Klaxon, 313 U.S. at 496, 61 S.Ct. 1020. As the Court explained, failure to follow these rules would allow “the accident of diversity of citizenship [to] disturb equal administration of justice in ... state and federal courts sitting side by side,” which would “do violence to the principle of uniformity within a state upon which the [Erie] decision is based.” Id. Nor can the majority rely on the general principle that a district court should “protect” the class by conducting a “heightened” or “rigorous” analysis of whether class counsel has satisfied certain Rule 23 prerequisites. Opinion at 693, 702-03, 704-06. Rule 23 says nothing about how choice-of-law issues should be resolved, nor does it require class counsel or the district court to make choice-of-law arguments on the objectors’ behalf. We should avoid importing into the class certification process “an additional hurdle” found nowhere in the Rule. Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126 (9th Cir. 2017). Moreover, the majority’s position puts us at odds with the reasoned decisions of other circuits. The prevailing view amongst our sister circuits is that “variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance.” Sullivan v. DB Investments, Inc., 667 F.3d 273, 301 (3d Cir. 2011) (en banc) (alteration in original) (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 529 (3d Cir. 2004)). These circuits reject the notion that Rule 23 places the burden on anyone other than the objector to prove which law applies. See Mex. Money, 267 F.3d at 747 (“Why [class counsel] should have an obligation to find some way to defeat class treatment is a mystery.”). As Judge Easterbrook has explained: It is best to bypass marginal theories if their presence would spoil the use of an aggregation device that on the whole is favorable to holders of small claims. Instead of requiring the plaintiffs to conduct what may be a snipe hunt, district judges should do what the court did here: Invite objectors to identify an available state-law theory that the representatives should have raised, and that if presented would have either increased the recovery or demonstrated the inappropriateness of class treatment. Id. This burden allocation makes sense because Rule 23 does not come into play until after a foreign law proponent has proven that the class claims are governed by multiple states’ laws. The majority’s contrary holding sends a district court on exactly the “snipe hunt” that the Seventh Circuit warns against. The problem created by the majority can easily be avoided simply by adhering to our own precedent, which is on all fours. In Hanlon v. Chrysler Corp., we affirmed certification under Rule 23(b)(3) of a nationwide settlement class of car owners alleging violations of state consumer laws. 150 F.3d at 1017, 1022. There, as here, multiple class actions were filed and then consolidated in California following a federal agency’s investigation, with the defendant announcing a remedial plan and entering into a settlement only after the class moved for certification. Id. at 1018. Like the Gentry objector in our appeal, an objector in Hanlon filed a late class action in another state and sought to litigate it in contravention of the district court’s orders. Id. at 1019. We held that common questions as to the defendant’s knowledge and the existence of the problem (the same questions at issue here) predominated, notwithstanding “variations in state law.” Id. at 1020, 1022-23. In rejecting the objectors’ argument that “the idiosyncratic differences between state consumer protection laws” defeated predominance, we reasoned that the claims revolved around a “common nucleus of facts” and applied the longstanding rule that “differing remedies” do not preclude class certification. Id. at 1022-23. That same reasoning applies with even greater force here, where the class claims turn on the Defendants’ common course of conduct (its fuel economy statements) and no objector established that the law of any other states applied. C. The settlement raises no concerns about collusion The majority implies that the settlement here raises the same concerns about collusion between class and defense counsel that animated Amchem. Opinion at 702-03. But this case is nothing like Amchem, which was the most “sprawling” class the Court had ever seen. 521 U.S. at 624, 117 S.Ct. 2231. There, asbestos manufacturers agreed to settle with class counsel for several pending products liability cases only upon receiving a global release for as-yet-unfiled lawsuits by future claimants, who class counsel did not represent. Id. at 601, 117 S.Ct. 2231. Unlike class counsel here, who litigated for years, the settling parties in Amchem never intended to litigate the future claimant's’ lawsuits. Id. at 601, 117 S.Ct. 2231. Instead, within a Single day, they filed a complaint, an answer, a proposed settlement, and a motion to certify a' class of current and future claimants-under! various state products liability laws—none of which are implicated here. Id. at 601-03, 117 S.Ct. 2231. The class encompassed individuals “exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods,” rendering some class members sick while others suffered “no physical injury.” Id. at 624, 117 S.Ct. 2231. But while the class definition was expansive; the remedies were anemic; The settlement allowed the defendants to unilaterally set the compensation for claims, capped the number of claims payable per year regardless of how many were filed, and bound the class in perpetuity despite allowing the-defendants to withdraw after ten years. Id. at.604-05,117 S.Ct. 2231. Unsurprisingly, the Court found the class untenable on multiple grounds, including inadequate representation, because' of class members’ conflicting interests. Id. at 627-28, 117 S.Ct. 2231. Whereas current claimants, who suffered from lung cancer and other asbestos-related illnesses, wanted to maximize the current payout, future claimants, who were healthy at the time, had a strong interest in preserving funds should they become sick. Id, at 624, 117 S.Ct. 2231. The Court also highlighted unexplained disparities between class members’ recovery, with some class members receiving no compensation at all and others receiving hundreds of thousands less than the average recovery for that claim. Id. at 604, 610 n.14, 117' S.Ct. 2231. It was in this collusive context that Amchem chided the district court for not devoting “undiluted, even heightened, attention” to Rule 23 criteria “designed- to protect” absent class members and their right to proper notice and adequate representation. Id. at 620, 117 S-.Ct. 2231 (citing- Rule 23(c) and (d)). Moreover, the Court expressly distinguished the case before it, where “individ.ual stakes are high and disparities among class members great,” from consumer class actions, where the predominance requirement is “readily met.” Id. at- 625, 117 S.Ct. 2231. The consumer class certified here raises none of the concerns identified in Am-chem. As Hanlon explained in distinguishing Amchem, the “heart” of the problem there was the class members’ conflicting interests: current claimants, who were sick, wanted to maximize the immediate payout, whereas healthy claimants had a strong interest in preserving funds in case they became ill in the future." Hanlon, 150 F.3d at 1020-211 Here, like in Hanlon, there are no such conflicts because all class members suffer from “the same problem”—cars with a fuel economy that is worse than advertised—for which they are all compensated, without any of the onerous terms that Amchem found objectionable. See id. at 1021. Nor does Amchem support decertification on the ground urged by the majority, namely, that the district court should have sua sponte catalogued the laws of all 50 state law to identify any variations and competing state, interests. Amchem did not address, much less conduct, a choice-of-law analysis. The fundamental problem in Am-chem was the factual differences between class members that created a conflict between potential claimants. Id. at 1020-21. And that conflict would have existed even if all the state laws,at issue were identical. Finally, faulting the district court at every turn, the majority fails to adhere to our deferential standard of review. When reviewing an order granting class certification, “we accord the district court noticeably more deference than when we review a denial.” Torres, 835 F.3d at 1132 (quoting Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 956 (9th Cir. 2013)). Our review of a class action settlement is “very limited” and we will “reverse only upon a strong showing that the district court’s decision was-a clear abuse of discretion.” Linney v. Cellular Alaska P’ship, 151 F.3d 1234, 1238 (9th Cir. 1998) (internal quotation marks omitted) (quoting Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). “This is especially true in light of the strong judicial policy that favors settlements,- particularly where ’ complex class action litigation is concerned.” Id. (quoting Class Plaintiffs, 955 F.2d at 1276); see also Rodriguez v. W. Publ’g Corp., 563 F.3d 948, 963-64 (9th Cir. 2009). The majority’s failure to apply a deferential standard of review is reflected in- the opinion’s unusual reliance on a tentative order in the Espinosa class action, which the district court never adopted. See Opinion at 695-97, 703. But it is only the district court’s final rulings—issued after it had the benefit of additional briefing, hearings, and over eight more months of discovery—which we are reviewing here. III. Used car owners need not offer individualized proof under the reasonable consumer test, which asks only if the public is likely to be deceived In excluding used car owners from the class, the majority again focuses on an argument not raised by the objectors and belied by the record. The reliance element of California consumer protection laws “does not require individualized proof’ that each plaintiff was exposed to a specific misrepresentation. Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 986-(9th Cir. 2015) (internal quotation mark omitted) (quoting In re Tobacco II Cases, 46 Cal.4th 298, 93 Cal.Rptr.3d 569, 207 P.3d 20, 35 (2009)). Rather, under the “reasonable consumer test,” reliance is presumed if “members of the public are likely to be deceived” by the defendant’s misrepresentation. Rubio v. Capital One Bank, 613 F.3d 1196, 1204 (9th Cir. 2010) (quoting Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008)); Tobacco II, 93 Cal.Rptr.3d 559, 207 P.3d at 29. In fact, the California Supreme Court has expressly rejected the view that a claim requires proof that purchasers “heard and had relied on specific misrepresentations.” Tobacco II, 93 Cal.Rptr.3d 559, 207 P.3d at 40. Applying.this standard, we routinely affirm class certification without demanding proof of every class member’s, exposure to the same misrepresentation. In Gutierrez v. Wells Fargo Bank, NA, for example, we upheld .class certification because common issues predominated, as to whether the public was likely to be deceived (and thus reliance could be presumed) by a bank’s “misleading marketing materials.” 704 F.3d 712, 728-79 (9th Cir. 2012). The district court identified four exhibits that contained the bank’s misleading marketing of its overdraft fees: a .website, a 2001 and 2005 brochure, and a new. account jacket from 2004 that was “customarily provided” at the opening of a new account. Id. at 729. On appeal, we did not limit the class to only those .new account holders who read the jacket; instead, we upheld certification of a class that included all account holders who had incurred overdraft fees from 2004 to 2008. Id. • at 718, 728-29. As we explained, the class was not overbroad because the “pervasive nature” of the marketing materials established reliance, as similar statements appeared in other advertising, which was enough--to show reliance under California law. Id. at 729; accord Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir.1975) (where there are “similar misrepresentations, ... the class is united by a common interest in determining whether a defendant’s course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members’ positions”). Similarly, the district court here did not limit the class to those who saw the Mon-roney stickers on new cars because the fuel economy statements were also “uniformly” made in “nationwide advertising.” The advertising campaign here was even more pervasive than in Gutierrez, with more than $100 million spent on a large number of print magazines, billboards, and TV commercials during the NFL playoffs, the Super Bowl, and the Academy Awards. The objectors do not refute any of this evidence, which in any event requires us to defer to the district court’s factual finding even if another view “is equally or more” plausible. Cooper v. Harris, — U.S. —, 137 S.Ct. 1455, 1465, 197 L.Ed.2d 837 (2017). The omissions in the advertising campaign here bear no resemblance to the “smaller-scale” advertisements of “quite disparate information” in Mazza, to which the majority (but not the objectors) analogizes. 666 F.3d at 586, 595-96. We have distinguished Mazza to uphold class certification where, as here, the class suffers from an “informational injury,” meaning “a common policy of non-disclosure” by the defendant. Torres, 835 F.3d at 1135. As we have explained, the outcome in Mazza was due to the defendant having “subjected only a small segment of an expansive class of car buyers to misleading material as part of a Very limited’ advertising campaign.” Id. at 1137 (quoting Mazza, 666 F.3d at 595). But where there exists “a common failure to disclose information, and not merely a disparate series of affirmative statements,” predominance is easily established. Id. at 1137-38; accord In re First All. Mortg. Co., 471 F.3d 977, 985, 990-91 (9th Cir. 2006) (affirming consumer class certification under California law based on defendants’ omissions and misrepresentations communicated through various loan officers). Rather than apply clear error review, the majority faults the settling parties for purportedly “not identifying] any evidence in the record of [a] massive advertising campaign.” Opinion at 704. But the settling parties directed us to such evidence, including the TV and print advertising discussed above. And, contrary to the majority’s assertion, the advertisements’ misleading fuel statements were pot limited to only Elantra vehicles. Importantly, the settling parties might well have identified more evidence had the objectors actually made the argument that the majority advances here. The objectors’ failure to do so waived the issue. See W. Radio, 678 F.3d at 979. Finally, the majority mistakenly equates the uniform advertising campaign here with the asbestos exposure in Amchem, Opinion at 704-05, which involved different substantive state law. Unlike the products liability claims in Amchem, the consumer claims here do not turn on individualized proof of exposure. See Rubio, 613 F.3d at 1204. Moreover, predominance is not defeated simply because there may be “important matters ... peculiar to some individual class members.” Tyson, 136 S.Ct. at 1045; Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) (reversing denial of class certification despite “some variation” in claims and “some potential difficulty in proof’). IV. The attorneys’ fees award was not an abuse of discretion The district court correctly calculated the attorney’s fee award using the lodestar method and then cross-checked that figure against the settlement’s estimated value to make the factual finding that the “total amount of attorney’s fees awarded in this case is far lower than ... 25% of the settlement figure.” The majority does not dispute this methodology, but criticizes the award based on its own miscalculation of the settlement’s value and the mistaken belief that the court failed to address the objectors’ questions. Opinion at 705-07. These are curious grounds for disapproval, as the objectors do not rely on them, instead confirming at oral argument that that their “only disagreement is with the multiplier that was applied to a portion of the fees.” Oral Argument at 17:01- 17:25. In fact, the concerns that the objectors raised were addressed by the district court in several hearings and rounds of supplemental briefing. The majority states that the court failed to answer the objectors’ questions about whether the Lifetime Reimbursement Program (“LRP”) portion of the settlement “could be attributed to the attorneys’ efforts in this litigation,” implying that the LRP was instead the result of the EPA investigation. Opinion at 706. But these questions were not raised by the objectors and, in any event, are answered by the district court’s finding that the investigation only played a “part” in Defendants’ announcement of the LRP on November 2, 2012. The LRP announcement came only after almost a year of dispositive motions, discovery, depositions, and expert reports, and just three weeks before a class certification hearing. It is therefore more than reasonable to infer, as the district court did, that this litigation pressured Defendants to announce the LRP. Certainly, the claims here were bolstered by the EPA’s finding that Defendants’ fuel economy representations were inflated. Yet other important elements of the class claims remained unresolved. Where, as here, other “pivotal issue[s]” remain, we have rejected objectors’ arguments that a federal investigation merits a reduction in class counsel’s fees. Vizcaino v. Microsoft Carp., 290 F.3d 1043, 1048 n.3 (9th Cir. 2002). And we have never before conjured arguments not advanced by objectors to discredit class counsel’s role in diligently litigating a case to settlement simply because, along the way, an agency’s findings confirmed the claims’ viability. To the contrary, we have upheld certification of nationwide class actions even when they were filed after a federal agency’s investigation established liability. See Hanlon, 150 F.3d at 1018. Moreover, the record supports the district court’s finding that attorneys’ fees were “far lower” than 25% of the settlement value even if we count only the portion of the settlement that is indisputably attributable to class counsel’s efforts: LRP claims filed after December 31, 2013 (the original LRP enrollment deadline that the settlement extended). As reflected in several expert[5] and other reports, the net present value of LRP claims filed after that date totaled more than $65 million by March 26, 2015, which was still several months away from the July 6, 2015, claim deadline.[6] An attorneys’ fees award of $8.9 million is less than 14% of this $65 million portion of the settlement. •The majority wrongly suggests that all class claims were worth less than “$44,-000,000 in total value.” Opinion at 701. The reports from which it plucks that number make clear that the $44 million reflected only lump sum payments for roughly 100,-000 “completed claims” as of March 2015. That number does not.include the $65 million in LRP claims filed after December 2013, nor the almost 42,000 “pending claims” that had not yet been paid, nor any other claims to be submitted in the more than three months before the July 6, 2015, claim deadline. Not only that, the majority’s concerns about how to account for class members who switched from' the LRP to a lump sum payment were addressed in expert reports that calculated the “incremental value” of the lump sum payments. These reports were never challenged below.[7] The majority also suggests that “this exact arrangement” has been found to be “one of the ‘subtle signs’ of collusion.” Opinion at .707 n.28 (quoting In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 943, 947 (9th Cir. 2011)). This case could not be more different than Blue-tooth, in which the settlement paid the class “zero dollars” and contained a “clear sailing” provision in which “defendants agreed not to object” to an award of attorneys’ fees totaling eight times the cy pres award, and a “kicker” clause whereby “all fees not awarded would revert to defendants.” 654 F.3d at 938, 947. The district court there made no findings under either the lodestar or the percentage method and instead awarded what “defendants agreed to pay.” Id. 943. Here, the settlement has no clear sailing or kicker clauses, Defendants successfully litigated a reduction in fees, the court made findings, and the class received tens of millions of dollars. Moreover, the settlement , here “was negotiated over multiple mediation sessions with a respected and experienced mediator,” class counsel were “experienced,” ..and class members had plenty of opportunities to raise their concerns at seven hearings over seventeen months. The majority has “floated out the specter” of collusion, “but brought forth no facts to give that eidolon more substance.” Negrete v. Allianz Life Ins. Co. of N. Am., 523 F.3d 1091, 1099 (9th Cir. 2008). Given that the objectors’ sole quibble is with the multiplier used by the district court, and reviewing factual findings for clear error, affirmance should be an easy call. The district court’s findings about the “complexity” of the work and the “risk” class counsel assumed by litigating this case are exactly , the kind of findings that justify an upward lodestar adjustment. Hanlon, 150 F.3d at 1029. Based on similar findings, we have affirmed fee awards totaling a far greater percentage of the class recovery than the fees here. See, e.g., Vizcaino, 290 F.3d at 1047-48 (no abuse of discretion to award fees constituting 28% of the class’s recovery given the “risk” assumed in litigating); In re Pac. Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) (no abuse of discretion where the “$4 million award (thirty-three percent [of the class’s recovery]) for attorneys’ fees is justified because of the complexity of the issues and the risks”). The majority’s disregard of our usual deferential review is deeply troubling. * * * In decertifying this class of hundreds of thousands of car owners who were deceived, the majority effectively ensures that “no one will recover anything.” In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000), as amended (June 19, 2000). “Settlement at least allows damages for some members of the class where, damages might otherwise be unobtainable for any, member of the class.” Id. Because the district court committed no error, I would affirm. . The majority attempts to soften its decision by noting that its vacatur of the class certification "does not mean that the court is foreclosed from certifying a class (or subclasses) on remand.” Opinion at 703. But this sentiment is undercut by the majority’s acknowledged "grave concerns about the viability of a nationwide class in this [case’s] context.” Opinion at 705. . The objectors’ burden is not the "modest” burden applicable when an out-of-state defendant invokes its due process right to be free from arbitrarily applied state law, Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). We cannot conflate the due process rights of out-of-state defendánts with those of objectors given that the "burdens placed by a State upon an absent class-action plaintiff are not , of the same order or magnitude as those it places upon an absent defendant.” Id. at 808, 105 S.Ct. 2965. While the objectors have a due process right to opt out of tire settlement, they have no due process right to dictate which state’s law applies to the class. See id. at 814, 105 S.Ct. 2965 (rejecting objectors’ due process challenge to' settlement). . Indeed, the lead plaintiff in the Gentry tag-along action (the. only Gentry objector to appeal) sought to hold hostage any class recovery under the settlement unless she and her ' attorney were certified to'represent a Virginia subclass that, by her own concession, would recover nothing because her claim was "time-barred” under Virginia law. Given that concession, any textual differences between the two states’ statutes are not "material” because they do not "make a difference in this litigation”: they do not result in a greater recovery under Virginia rather than California law. Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 590 (9th Cir. 2012). . See, e.g., Rutledge v. Hewlett-Packard Co., 238 Cal.App.4th 1164, 190 Cal.Rptr.3d 411, 431-32 (2015) (reversing denial of nationwide consumer class certification where lower "court improperly placed the burden” on class counsel because "the burden was on [the foreign law proponent] to demonstrate that the interests of other state’s laws were greater than California’s interests”). . These expert reports were filed in appeal No. 15-56014 on March 10, 2016. . That $65 million figure is the sum of the net present value of LRP claims filed from January through December 2014 with Hyundai ($13,698,496) and Kai ($12,535,120), plus net present value of LRP claims filed after that date with Hyundai ($21,862,156) and Kia ($17,655,276). . These reports reflect a total settlement value of, conservatively speaking, more than $159 million as of March 2015—three months before the July 6, 2015, claim deadline. That $159 million reflects the sum of the $65 million in LRP claims filed after December 31, 2013, another $50 million in LRP claims filed before that date, and $44 million in lump sum payments. Given' that the settlement totaled $159 million well before the claim deadline, the district court was correct that the claims process was on track to reach an estimated $210 million. Where, as here, a settlement involves "a complicated formula from which valuable considerations of several kinds are provided to the class members,” it is no abuse of discretion to use a settlement’s “estimated value" when calculating fees. Wing v. Asarco Inc., 114 F.3d 986, 990 (9th Cir. 1997).